Good morning and welcome to the Ninth Circuit. Judge Thomas and I would like once again to welcome Judge Rosenthal from the United States District Court for the Southern District of Texas. We really appreciate your willingness to help us with our work. Thank you, it's a pleasure. We'll hear argument first this morning in Lopez Rivas v. Garland. Counsel, you may proceed. May it please this Court, my name is Jose Moren. I'm appearing on behalf of Francisco Antonio Lopez Rivas, Esmeralda Alessandra Olano-Portillo, Alessandra Elizabeth Lopez Olano, Andrea Celeste Lopez Olano, and Josue Isaias Lopez Olano, the petitioners. Would this Court care for a brief presentation of the facts? I think we're generally familiar with the facts, so you can just go ahead with your argument. Yes, Your Honor, we received an order from this Court informing the parties to be ready to discuss two specific cases, Gonzalez-Lara v. Garland and Manzano v. Garland, Alfaro-Manzano v. Garland. I'd like to start with Gonzalez-Lara v. Garland. In that case, the petitioner, the respondent below, was an individual who, on appeal at the BIA, became eligible for voluntary departure. The reason why he became eligible for voluntary departure is because the notice to appear that he was issued was missing the date and in place of the initial hearing. As you may know, the Supreme Court, during this time, issued several decisions, including Pereira v. Sessions and Nick v. Garland, or Nicknames Chavez v. Garland. Subsequent to that, this Court issued a decision in, I believe it's Pozo Sanchez v. Garland, where this Court said that when an individual, a respondent, does not receive a notice to appear with that specific information, that does not trigger this top-time rule for purposes of voluntary departure. So just to clarify, are you seeking voluntary departure at this point? No, Your Honor, but this Court indicated that the Court wanted to discuss that case, and I just wanted to explain a little bit more before I go into how it applies to my client's case. Okay. That's okay. Okay. And in this case, the Court issued a ruling saying that even a person that when there's a change of law, a respondent does not have to necessarily request a relief at the immigration court level. That at any time after that, even if it's during appeal, the respondent is able, petition in this case, is able to file a petition or a motion to reopen or a motion to remand to seek voluntary departure. In our case, it's exactly the same situation, and I think we briefed a little bit about that on the opening brief. The respondent in our case, the petitioner, was served a notice to appear that was missing that information, and after the briefing was completed at the BIA, this Court issued, decided, Polsos-Sanchez v. Garland. And for that matter, my client does qualify for voluntary departure. We have not filed any type of motion at this point to reopen the matter before the BIA, simply because we decided that it was best to argue all the issues before this Court before we did that. But if you're not seeking voluntary departure, why is any of this relevant? Because my client might, in the future, at any point... I guess when I said are you seeking it, I mean, are you asking us to... what are you asking us to do with respect to voluntary departure? I believe that what I'm looking for is for this Court to remand the case so they can consider the other issue with the nexus issue and in the alternative to allow the respondent to seek voluntary departure if the BIA finds that there is no nexus. So you are you are seeking... Yes, Your Honor, in the alternative. Okay, but that... so then my question is, in your brief, I did not understand that from your brief. Your brief mentions voluntary departure only in the context of a due process claim. So I understood your argument to be that there was a due process violation and that the IJ didn't tell you about voluntary departure. Is that a fair characterization of the argument? That is, Your Honor, that is. And my apologies if it was not clear. I am only bringing that issue to tell you that the case before us or before you is the same, exactly the same as the other one. But the other issue that I had with the proceedings before in the Immigration Court is that the IJ failed to inform the respondent that, in that case, that they may qualify for voluntary departure. And I do apologize for the IJ at that point, because at that point, this Court had not decided that case. But at the same time, the law is the law, and if there was a change in law, then my client should be able to request voluntary departure. And unfortunately, I did not get the case when it was at the BIA. My client came to me once the BIA had issued the final decision. And so I raised that issue that had he been advised of that, he could have possibly applied voluntary departure and not — I am imposing some sort of duty on the IJ, on the immigration judge, because at that point when they were deciding that case, I believe Pereira was around. Well, that is what Gonzalez-Lara says. I think that you didn't have to exhaust this before the Board. But, you know, my concern is that case does not say that you don't have to raise the issue to this Court. And it's not clear to me that you did that until just now. Is that your response to that? Absolutely correct, Your Honor. The issue presented in the opening brief was that the IJ failed to inform the respondent of the ability or the apparent eligibility for voluntary departure. Right. But the IJ at that point, well, your clients were not eligible for voluntary departure under the law that existed at that point, correct? Your Honor, if I may be a little bold here, was he not? The law was always the same. The NTA was not an NTA at that point. No, no, no. But, I mean, there was no court case that supported you. The IJs had been applying that law consistently and basically saying, if you're not eligible, I don't have to advise you. Why is that a due process violation? Because the regulations specifically state that the IJ is supposed to advise a respondent of the apparent eligibility. Potential, potential. But we also have case law that says if you're not eligible, you don't have to advise. Correct, Your Honor. And this is where I am conflicted because some of us were already taking the position that the NTA did not trigger the stop-time rule when parallel was decided. And so if anybody knows the law best, they're supposed to be the immigration judges. And I do believe that the judge could have at least alerted the respondent or at least read the law in a way that was favorable to the respondent in the sense that he might have qualified voluntary departure. Now, the respondent in that case did not have to apply for voluntary departure, but at least a notice from the IJ would have been adequate or proper in that situation. So the cases that you cite don't deal with due process. They just say you're required to advise the respondent of potential eligibility for voluntary departure. Do you have any due process cases? Your argument is it's a due process error not to advise. Do you have any cases that support that? No, Your Honor. All I can say is that is that the Supreme Court has told us before that, you know, respondents don't have the same due process that we have except the one that Congress provides. And the INA specifically says that immigration judge shall conduct proceedings. And the INA specifically says also that the agency will issue regulations to enforce those provisions. And one of the regulations is to advise the respondent of potential eligibility. And I think that's a due process claim. Whether it's a due process claim or a regulatory violation claim, are you asking us to remand to the agency so that your clients can be advised of their ability to seek voluntary departure if they so choose? Absolutely, Your Honor. That's what I'm asking for. A minute ago, you said your clients. I heard two conflicting things. I heard first that your clients were not going to seek voluntary departure. And then your argument that remand in order that they could be advised of their opportunity was appropriate. Where are we? I understand, Your Honor. And I apologize again for the confusion, the conflicting position that I'm providing. But my view is that the respondent of the petition in this case can seek alternative relief. And I do believe that the main claim that we have before you for my client is the asylum relief as opposed to the voluntary departure. Voluntary departure is always the last alternative for my clients. It's always the last alternative because they fear for their safety going back. And sometimes just the law is now on their side. And we have to really consider voluntary departure as an alternative for them. What's the relevance of the fact that your clients have legal status in  Your Honor, my clients do not feel safe in Mexico. And the IJS are capable of providing or granting asylum even if somebody has resettled permanently in a different country. And in the record, it reflects some of that information. They were being discriminated because they're Central Americans. And that's also extremely compelling in my opinion. We're asking them to live in a place where they're going to be discriminated for the rest of the time that they're there. And in addition to that, the respondent did provide credibly, the IJS found all the testimony to be credible, that there are gangs that have infiltrated the Mexican territory. And that's incredibly sad as well. And he specifically mentioned that they did not feel safe because of the gang's presence in Mexico. Do you want to get to the merits? Yes, Your Honor. I just wanted to touch on the mixed motives case. I did read the case and thank you for alerting me to it. I do believe that this is a case a little bit different. In that case, there are two tests that were provided. One is basically a but-for-cost test with a minor or tangential reason. And the other one is a sufficiency test. In this case, it's a bit difficult because my client expressed that he was targeted because he was a taxi driver. Correct? But then they were imposing additional things to do, carry contraband, weapons and drugs, because he was a Christian. So it's very difficult for me to apply their test because in the initial test, in the but-for-cost test, we're talking about a bucket, the analogy the court provided, where like a persecutor may have multiple reasons for hating somebody. And it's just a little drop that causes the bucket to overflow. And I think that's maybe what the court was alluding to, that perhaps the Christianity aspect of it was just a little drop. But that doesn't really apply to this case because it is possible that my client was persecuted for being a taxi driver. But in addition to that, he was persecuted differently from other taxi drivers. They wanted him to transport drugs specifically because of his Christianity. And so in this situation, the court has said that the reason doesn't have to be dominant. And I am almost daring to say that the Christianity was not necessarily dominant, but it was a very, very strong reason. And we know it because they persecuted him differently than the rest of them. It wasn't just a taxi driver that was being extorted. It was a taxi driver that was a Christian that was being extorted and asked to transport drugs and weapons. And that is very dangerous. People die doing those sort of things, especially when you're transporting such weapons that the government of El Salvador may find to be extremely dangerous. They may die in the interception. And that's speculation, I know. But also, opposing gangs can also intercept him with those weapons. And that is very, very serious. And so to say that he was persecuted like any other taxi driver and that the Christianity was not a factor is not proper. The gang specifically targeted him for those two reasons. And it's kind of hard to sort of separate and know what was the main reason. This court has never required a 51% or more to know what was the reason behind it. But we know that he was targeted and persecuted differently than other taxi drivers that were not Christians. You're down to under two minutes. Do you want to reserve some time? Yes, Your Honor. Thank you very much. We'll hear from the Attorney General. May it please the Court. My name is Robert Coleman. I represent the Attorney General. Would you mind moving your mic up a little bit? Thanks. Yes, absolutely. Is that better? The only issue pertaining to Lopez's religious persecution claim that is properly before the court is the narrow argument that he raised to the Board pertaining to that issue, which was simply that the immigration judge impermissibly relied on the high percentage of evangelical Christians residing in El Salvador to find no nexus. The Board justifiably rejected that argument as the immigration judge relied on two other factors. Lopez does not challenge the Board's reasoning on that point, nor does he argue in his opening brief that the Board erred by not addressing any additional argument pertaining to his religious persecution claim. So any argument as to any other aspect of that claim is simply not properly before the court. However, even if it were properly before the court, the evidence simply does not support Lopez's claim here. That can be seen most clearly when comparing the Manzano case that was referenced by this Court in the focus order and referenced briefly during an opening argument and the facts of this case. In Manzano, the petitioner there was publicly preaching in the street. The gang members approached him, referenced his public preaching, referenced his religious adherence and mocked him for it, threatened him with harm if he continued preaching. He did continue preaching and they did try to harm him. Here we simply don't have any connection to Lopez's Christianity here. El Conejo simply wanted to evade the police and targeted him because he was clean-cut, but there is no evidence that he cared about his religion That argument is unexhausted, as Respondent argued in our brief. This case is different than in Gonzalez-Lara. In Gonzalez-Lara, the Respondent also argued that the argument for voluntary departure was unexhausted, but in that case, the petitioner had filed a motion to remand with the board based on Poso Sanchez, the change in law and the potential availability of voluntary departure relief in that case. Here, Lopez simply did not do that despite the fact that the Poso Sanchez case came out in 2021 and the board's decision here didn't issue until 2023, so he could have filed such a motion. Without having done that, any argument as to voluntary departure is unexhausted and he, moreover, doesn't provide a prima facie case of evidence to support such a claim. So you would agree that before the IJ, the voluntary departure request would have been futile? Correct. And generally, we don't require exhaustion on futility, if there is futility. So your argument is only that he didn't raise it to the board? Correct, and that's what this court . . . Do you have a case that says that? In other contexts, we've just remanded so the board can, when there's a change in law, that the board can consider it in the first instance. The case I have is Gonzalez-Lara. In that case, this court said that the proper procedure in just such an instance is to file a motion to remand with the board when the change in law happens during dependency of an appeal with the board, and we have the same facts here. The only difference is that here, he didn't file such a motion to remand. He should have. And you agree that now, they would be eligible for voluntary departure? No, not necessarily. It would have . . . Statutorily eligible? Perhaps not. There are several criteria that need to be met, and . . . Why don't you think they met the criteria, or meet the criteria? They haven't provided prima facie evidence to show that they do meet the criteria. There are four criteria. So the NTA issue only goes to presence. That's only one of the issues. But as this court found in Gonzalez-Lara, because in Gonzalez-Lara, the court did not remand. The court found that the error was harmless because in Gonzalez-Lara, the petitioner didn't establish prima facie eligibility for voluntary departure. The same goes here. In the opening brief, which is the first time voluntary departure has been mentioned, there are three conclusory sentences as to the remaining three factors that just say there's no evidence undermining our claim. That isn't prima facie evidence. Well, here the IJ found them credible, right? Correct. But there was no development of . . . I understand that, but I'm just saying, do you have anything today to say that they wouldn't qualify for voluntary departure, except to say the evidence isn't in the record? No. The evidence just isn't in the record because of the failure to exhaust. So if the failure to exhaust is excused because it would have been futile at the time, doesn't that simply support a remand? It does in the abstract. The problem is that here the petitioner did not obey the proper procedures as expressed in Gonzalez-Lara, where the court said that you need to file. It's not that they needed to pursue a futile claim. That certainly isn't required. But when there's a change in law that happens during the pendency of an appeal at the Board, and here there was a two-year lag between them, then a motion to remand needs to be filed. And raising it for the first time here and throwing in three conclusory sentences, basically relying on the fact that there's been no development of the record, simply isn't sufficient. So your argument is essentially waiver? Yes, it's a waiver, failure to exhaust, and lack of pre-emphasis evidence. The court has no further questions. Respondent respectfully requests that the court deny the petition for review. Thank you. Thank you. I'd just like to read the quote from the case regarding exhaustion. We have also recognized that a petitioner does not need to exhaust a claim by applying for a form of relief where the application would be futile. And this quote cited Vasquez-Rodriguez v. Garland, where the agency's position appears already set and a recourse to administrative remedies is very likely. Futile exhaustion is not required. In this case, the respondent entered the United States on January 21, 2017. The NTA did not have that time and place. The period was decided in 2018. The merits hearing was on March 25, 2019. The respondent filed their appeal on May 9, 2019. The briefing was to be completed on February 16, 2021. Postal sanctions was decided on July 7, 2021, well after the briefing was completed. The BIA issued a decision on May 1, 2023. So that shows that it would have been futile, and this court has never, ever required anyone to pursue anything that's futile. And what the defendant, the respondent, has argued before this court is just simply to reverse its own decision and require a petitioner to file a motion to remand or to reopen, which is not in conformity with current law. Thank you. Thank you. Thank both counsel for the arguments and the cases submitted.
judges: THOMAS, MILLER, Rosenthal